**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

D. SAVAGE, LLC, and TRISURA )
SPECIALTY INSURANCE COMPANY )
a/s/o/ D. SAVAGE, LLC, )
)
        Plaintiffs, )
)
     v. ) Case No. 5:21-cv-12427
)
GAVITA NORTH AMERICA, FANLIGHT )
CORPORATION, INC., and HYDROFARM )
HOLDINGS GROUP, INC., )
)

        Defendants.

**<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

NOW COME the Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, by and through their attorneys, Thompson Brody & Kaplan, LLP, and for their First Amended Complaint against GAVITA NORTH AMERICA, LTD, FANLIGHT CORPORATION, INC., and HYDRODARM HOLDINGS GROUP, INC., hereby state as follows:

**<u>PARTIES</u>**

1.    At all relevant times, D. SAVAGE, LLC ("D. Savage"), owned and operated a marijuana grow facility located at 4473 W. Jefferson Ave, Suite C in Detroit, Michigan ("the subject property") and consisted of three members: Daniel Pettigrew who is a citizen of and domiciled in the State of Illinois, Cotea Jones who is a citizen of and domiciled in the State of Michigan, and Albert Harrington who is a citizen of and domiciled in the State of Texas.

2.    At all relevant times, TRISURA SPECIALTY INSURANCE COMPANY ("Trisura"), was an Oklahoma corporation with its principal place of business at 210 Park Avenue,

1

Oklahoma City, Oklahoma, that was licensed to and did provide business property and business personal property insurance policies to businesses in Michigan, including D. Savage.

3.      At all relevant times, D. Savage purchased and maintained an insurance policy with Trisura (Policy No. TRQSPR001193-00) ("the Policy") covering the subject property and this policy was in full force and effect on June 13th, 2020, the date of the subject loss.

4.      At all relevant times, the Defendant, GAVITA NORTH AMERICA ("Gavita"), was a Washington corporation in the business of manufacturing greenhouse lighting fixtures, with its principal place of business located at 3204 NW 38th Circle in Vancouver, WA 98660.

5.      At all relevant times, the Defendant, FANLIGHT CORPORATION ("Fanlight"), was a California corporation in the business of manufacturing and distributing high intensity grow lamps, with its principal place of business located at 2000 S. Grove Avenue, Building B in Ontario, CA 91761.

6.      At all relevant times, the Defendant, HYDROFARM HOLDINGS GROUP, INC., ("Hydrofarm"), was a Delaware corporation with its principal place of business located at 2249 S. McDowell Ext., Petaluma, CA 94954 in the business of manufacturing and distributing hydroponics equipment.

## JURISDICTION AND VENUE

7.      This court has subject matter jurisdiction over this matter pursuant to Title 28 U.S.C. §1332(c)(1) because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

8.      Venue is proper in this judicial district pursuant to Title 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district. In addition, the property that is the subject of this action is situated in this judicial district.

**FACTS**

9.      At all times relevant, D. Savage operated a marijuana grow facility located at 4473 W. Jefferson Ave, Suite C in Detroit, Michigan.

10.      Prior to June 13, 2020, Gavita placed its products into the stream of commerce within the state of Michigan.

11.      Prior to June 13, 2020, D. Savage, purchased a Gavita Pro double-ended fixture (the "subject fixture") designed, manufactured and distributed by Gavita.

12.      Prior to June 13, 2020, D. Savage, purchased a Phantom Pro 1000-watt, double-ended metal halide lamp (the "subject lamp") designed and manufactured by Plusrite Electric Co., Ltd., and distributed by Fanlight within the United States.

13.      Prior to June 13, 2020, Hydrofarm rebranded the subject lamp, labeled the subject lamp, created literature for the subject lamp, and sold and marketed the subject lamp as its own product under the Phantom Pro label.

14.      Prior to June 13, 2020, D. Savage installed the subject fixture and lamp in its growing room.

15.      On or about June 13, 2020, the subject lamp burst, and molten fragments of the lamp fell onto the grow table below, causing a fire.

16.       As a direct and proximate result of the fire, D. Savage suffered damage to its building and contents, as well as extra expense and business operations.

17.      As a result of the fire, the D. Savage submitted a claim to the Trisura (Claim No. 017.010014.00) and requested payment for the damages incurred.

18.      Pursuant to the Policy, the Trisura thereby became obligated to pay and did pay D. Savage for the damages incurred as a result of the fire

19.     Plaintiff has thereby become subrogated to the rights of its insured to the extent of the damages paid on this claim.

20.     D. Savage sustained additional out-of-pocket losses with the total of Plaintiffs' claims exceeding $75,000.00.

## COUNT I – NEGLIGENCE – GAVITA

21.     Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

22.     At all times relevant, D. Savage exercised due care and caution in the operations and maintenance of its premises, including the grow room, for the safety of its building and property.

23.     At all times relevant, Gavita owed D. Savage a duty to exercise reasonable care and caution in the design and manufacturing the subject fixture.

24.     Notwithstanding said duty, Gavita committed one or more of the following negligent acts and/or omissions:

   a. Failed to provide proper warning labels on the fixture regarding bulb compatibility;

   b. Failed to provide adequate measures to ensure that only compatible bulbs fit properly in the fixture;

   c. Designed the fixture in such a manner that dangerous, incompatible bulbs not only fit into the fixture, but functioned properly for extended periods of time;

   d. Manufactured the fixture in such a manner that dangerous, incompatible bulbs not only fit into the fixture, but functioned properly for extended periods of time;

   e. Failed to install a metal cage on the fixture to prevent molten lamp fragments from falling in the event of a lamp failure;

   f. Was otherwise careless or negligent.

4

25.     As a direct and proximate result of one or more of the following negligent acts and/or omissions committed by Gavita, Plaintiffs suffered extensive damage to their real and personal property and its business operations, in excess of $3,500,000.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment in their favor and against Defendant, GAVITA NORTH AMERICA, for an amount in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

<u>**COUNT II – STRICT PRODUCT LIABILITY – GAVITA**</u>

26.     Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

27.      The subject fixture was designed, manufactured, produced and distributed by Gavita in its ordinary course of business.

28.     At the time the subject fixture was placed into the stream of commerce by Gavita, Gavita owed a duty to the public, including D. Savage, to ensure that its product was safe and free from any dangerous and/or hazardous conditions that would cause a fire when used in the intended and reasonably anticipated manner by consumers, including D. Savage.

29.     Despite these duties, Gavita placed the subject fixture into the stream of commerce while unsafe and unreasonably dangerous and/or hazardous for the intended and reasonably anticipated use by consumers.

30.     Gavita knew or should have known that the subject fixture was unsafe and unreasonably dangerous and/or hazardous for the reasonably intended and anticipated use by consumers.

31.     Gavita breached its duties when it failed to design and manufacture the subject fixture for safe use, and free from unreasonably dangerous and/or hazardous conditions when used in the intended and reasonably anticipated use by consumers in one or more of the following ways:

    a.  Failed to design, manufacture or produce the subject fixture according to industry standards for fixtures used in grow facilities;

    b.  Failed to design, manufacture or produce the subject fixture in a manner that ensured only compatible bulbs could be used within the fixture;

    c.  Failed to provide adequate warnings regarding the compatibility of the fixture with alternative lamps;

    d.  Otherwise failed to design, manufacture, or produce the subject fixture for safe use, and free from unreasonably dangerous and/or hazardous conditions when used in the reasonably anticipated use by consumers.

32.     At all times relevant, the subject fixture was used in the reasonably anticipated manner by D. Savage.

33.     As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject fixture for reasonably anticipated use by consumers and the resulting fire, D. Savage suffered extensive damage to its property all to the loss and detriment of the Plaintiffs.

34.     As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject fixture for the reasonably anticipated use by consumers and the resulting fire, the Plaintiffs incurred damage in excess of $75,000.00.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment in their favor and against Defendant, GAVITA NORTH AMERICA, for an amount in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

## <u>COUNT III – NEGLIGENCE - FANLIGHT</u>

35.     Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

36.     At all relevant times, D. Savage exercised due care and caution in the operations and maintenance of the premises, including the grow room, for the safety of its building and property.

37.     Fanlight, at all times herein mentioned, owed D. Savage a duty to exercise reasonable case and caution in manufacturing and distributing the subject double-ended metal halide lamps.

38.     Notwithstanding said duty, Fanlight committed one or more of the following negligent acts and/or omissions:

   a.   Failed to perform adequate inspections of the lamp to ensure the safety of the double jacketed design;

   b.   Described the lamp as open rated;

   c.   Failed to provide adequate measures to ensure that the lamp did not drop molten materials in the event of a failure;

   d.   Failed to properly warn of the risk of drop down of molten materials in the event of a failure; and

   e.   Was otherwise careless or negligent.

39.     As a direct and proximate result of one or more of the following negligent acts and/or omissions committed by Fanlight, D. Savage suffered extensive damage to its real and personal property and its business operations, in excess of $75,000.00.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment

in their favor and against Defendant, FANLIGHT CORPORATION, INC., for an amount in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

**COUNT IV – STRICT PRODUCT LIABILITY - FANLIGHT**

40. Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

41. The subject lamp was manufactured and distributed by Fanlight in its ordinary course of business.

42. At the time the subject lamp was placed into the stream of commerce by Fanlight, Fanlight owed a duty to the public, including D. Savage, to ensure that its product was safe and free from any dangerous and/or hazardous conditions that would cause a fire when used in the intended and reasonably anticipated manner by consumers, including D. Savage.

43. Despite these duties, Fanlight placed the subject lamp into the stream of commerce while unsafe and unreasonably dangerous and/or hazardous for the intended and reasonably anticipated use by consumers.

44. Fanlight knew or should have known that the subject lamp was unsafe and unreasonably dangerous and/or hazardous for the reasonably intended and anticipated use by consumers.

45. Fanlight breached its duties when it failed to manufacture and distribute the subject lamp for safe use, and free from unreasonably dangerous and/or hazardous conditions when used in the intended and reasonably anticipated use by consumers in one or more of the following ways:

    a. Failed to design, manufacture or produce the subject lamp according to industry standards for lamps used in grow facilities;

8

b. Failed to design, manufacture or produce the subject lamp in a manner so as to avoid drop down of molten materials in the event of a failure;

c. Failed to properly warn of the risk of drop down of molten materials in the event of a failure;

d. Marketed the lamp as safe for use with the subject Gavita fixture;

e. Otherwise failed to design, manufacture or produce the subject lamp for safe use, and free from unreasonably dangerous and/or hazardous conditions when used in the reasonably anticipated use by consumers.

46. At all times relevant, the subject lamp was used in the reasonably anticipated manner by D. Savage.

47. As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject lamp for reasonably anticipated use by consumers and the resulting fire, D. Savage suffered extensive damage to its real and personal property and its business operations.

48. As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject lamp for the reasonably anticipated use by consumers and the resulting fire, the Plaintiffs incurred damages in the amount of $75,000.00.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment in their favor and against Defendant, FANLIGHT CORPORATION, INC., for an amount in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

## COUNT V – NEGLIGENCE - HYDROFARM

49. Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

9

50.     At all relevant times, D. Savage exercised due care and caution in the operations and maintenance of its premises, including the grow room, for the safety of its building and property.

51.     Hydrofarm, at all times herein mentioned, owed D. Savage a duty to exercise reasonable care and caution in selling, labeling and creating literature for Phantom Pro 1000-watt, double-ended metal halide lamps.

52.     Notwithstanding said duties, Hydrofarm committed one or more of the following negligent acts and/or omissions:

      a.  Failed to perform adequate inspections of the lamp to ensure the safety of the double jacketed design;

      b.  Described the lamp as open rated;

      c.  Failed to provide adequate measures to ensure that the lamp did not drop down molten materials in the event of a failure;

      d.  Failed to provide a warning label that double-ended metal halide lamps can drop molten materials in the event of a failure;

      e.  Prepared labels and literature under the Hydrofarm Brand which failed to address compatibility issues between the subject Gavita fixture and subject Hydrofarm lamp;

      f.  Distributed lamps under the Phantom Pro label that were prone to failure and posed a risk of fire when used as described in Hydrofarm literature.

53.     As a direct and proximate result of one or more of the following negligent acts and/or omissions committed by Hydrofarm, Plaintiffs suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment in their favor and against Defendant, HYDROFARM, HOLDINGS GROUP, INC., for an amount

in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

### COUNT VI – STRICT PRODUCT LIABILITY - HYDROFARM

54. Plaintiffs restate and reallege the preceding paragraphs as though fully set forth herein.

55. The subject lamp was sold by Hydrofarm in its ordinary course of business.

56. At the time the subject lamp was placed into the stream of commerce by Hydrofarm, Hydrofarm owed a duty to the public, including D. Savage, to ensure that its product was safe and free from any dangerous and/or hazardous conditions that would cause a fire when used in the intended and reasonably anticipated manner by consumers, including D. Savage.

57. Despite these duties, Hydrofarm placed the subject lamp into the stream of commerce while unsafe and unreasonably dangerous and/or hazardous for the intended and reasonably anticipated use by consumers.

58. Hydrofarm knew or should have known that the subject lamp was unsafe and unreasonably dangerous and/or hazardous for the intended and reasonably anticipated use by consumers.

59. Hydrofarm breached its duties when it failed to sell the subject lamp for safe use, and free from unreasonably dangerous and/or hazardous conditions when used in the intended and reasonably anticipated use by consumers in one or more of the following ways:

    a. Failed to perform adequate inspections of the lamp to ensure the safety of the double jacketed design;

    b. Described the lamp as open rated;

    c. Failed to provide adequate measures to ensure that the lamp did not release molten materials in the event of a failure;

    d.  Failed to provide a warning label that double-ended metal halide lamps can release molten materials in the event of a failure;

    e.  Prepared labels and literature under the Hydrofarm Brand which failed to address compatibility issues between the subject Gavita fixture and subject Hydrofarm lamp;

    f.  Distributed lamps under the Phantom Pro label that were prone to failure and posed a risk of fire when used as described in Hydrofarm literature.

60.    At all times relevant, the subject lamp was used in the reasonably anticipated manner by D. Savage.

61.    As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject lamp for reasonably anticipated use by consumers and the resulting fire, D. Savage suffered extensive damage to its real and personal property and its business operation.

62.    As a direct and proximate result of the unsafe, unreasonably dangerous and/or hazardous nature of the subject lamp for reasonably anticipated use by consumers and the resulting fire, the Plaintiffs incurred damages in excess of $75,000.00.

WHEREFORE, Plaintiffs, D. SAVAGE, LLC, and TRISURA SPECIALTY INSURANCE COMPANY as subrogee of D. SAVAGE, LLC, pray that this Court enter judgment in their favor and against Defendant, HYDROFARM, HOLDINGS GROUP, INC., for an amount in excess of $75,000.00 together with costs, reasonable interest, and any other remedy this Court deems just and appropriate.

Respectfully submitted,


THOMPSON BRODY & KAPLAN, LLP


By: */s/ Matthew McLean*_____

   Attorneys for Trisura Specialty Insurance Company


Matthew S. McLean
Thompson, Brody and Kaplan, LLP
161 N. Clark St. Suite 3575
Chicago, IL 60601
Phone No. (312) 374-8879
Fax No. (312) 782-3787
E-Mail: McLean@tbkllp.com